IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 2:15-cv-11461 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYED N. AHMED; NASAH INC.; | ) | |
| MILLINIUM FINANCIAL SOLUTIONS, | ) | |
| INC.; MARS, INC.-HAMTRAMCK; MAHAD | ) | |
| INC.; all d/b/a LIBERTY TAX SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The United States of America seeks a permanent injunction against Defendants Syed N. Ahmed, Nasah, Inc., Millinium Financial Solutions, Inc., Mars, Inc.-Hamtramck, and Mahad, Inc., all doing business as Liberty Tax Service, barring them from further acting as federal tax return preparers. The United States of America alleges as follows:

1.      Defendant Syed Ahmed is the owner and manager of at least ten Liberty Tax Service tax-return preparation stores, which he operates through his business entities, Nasah, Inc., Millinium Financial Solutions, Inc., Mars, Inc.-Hamtramck, and Mahad, Inc.

2.      Liberty Tax Service is a franchisor in the brand- and franchise-business, marketing tax preparation services throughout the United States.  It is headquartered in Virginia Beach, Virginia.

3.      Ahmed is a franchisee of Liberty Tax Service, who owns and operates his tax-return preparation stores in the Detroit, Michigan, and Chicago, Illinois, metro areas. These Liberty Tax Service stores have prepared and filed hundreds, if not thousands, of false and fraudulent federal income tax returns.

4.      Specifically, defendants' employees intentionally input false information on customers' federal tax returns and intentionally manipulate their customers' federal income-tax liabilities to generate higher refunds or higher refundable credits. The United States brings this action to put an end to this illegal conduct and to prevent future harm to the U.S. Treasury.

5.      The United States brings this complaint pursuant to 26 U.S.C. (the Internal Revenue Code ("I.R.C.")) §§ 7402, 7407, and 7408 to permanently enjoin defendants, and all those in active concert or participation with them, from directly or indirectly:

a.      acting as federal tax return preparers, or filing, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than Syed N. Ahmed's own personal tax returns;

b.      filing, providing forms for, or otherwise aiding and abetting the filing of IRS Forms 1040, 1040X, 8867, 8863, Schedule C, or any other IRS forms containing false or fabricated information;

c.      advising taxpayers to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the misuse of IRS Forms 1040, 1040X, Schedule C, or other IRS forms by inputting false or fabricated information;

d.      owning, managing, controlling, working for, profiting from, or volunteering for a tax-return-preparation business;

e.      seeking permission or authorization (or helping or soliciting others to seek permission or authorization) to file tax returns with an IRS Preparer Tax Identification Number ("PTIN") and/or IRS Electronic Filing Identification

Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns;

f.      using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN(s) or EFIN(s);

g.      engaging in conduct subject to penalty under I.R.C. §§ 6694, 6695 or 6701, including:  preparing and filing tax returns or other documents that understate the tax liabilities of others, preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of  a taxpayer's entitlement to a federal tax refund, failing to comply with required due diligence procedures, failing to furnish tax-return preparer identifying numbers, and promoting any false tax or tax-return scheme;

h.      preparing Syed N. Ahmed's own federal income tax return with fabricated income or false deductible expenses, or which purposely understates his own tax liability;

i.      representing anyone other than himself before the IRS; and

j.      engaging in any other conduct that is subject to penalty under the Internal Revenue Code or that interferes with the proper administration and enforcement of the internal revenue laws.

## Jurisdiction and Venue

6.      Jurisdiction is conferred on this Court by 28 U.S.C §§ 1340 and 1345, and 26 U.S.C. § 7402.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), and 26 U.S.C. §§ 7407(a) and 7408(a) because Ahmed maintains places of business in this district, and a substantial portion of the events giving rise to this action occurred within this judicial district.

### Authorization

8.     This action has been authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

### The Defendants

9.     Ahmed currently resides in Oak Brook, Illinois, and is the founder, owner, president, and sole shareholder of Nasah, Inc. ("Nasah"), Millinium [sic] Financial Solutions, Inc. ("Millinium"), Mars, Inc.-Hamtramck ("Mars"), and Mahad, Inc. ("Mahad"). Ahmed uses these companies to operate Liberty Tax Service tax-return preparation stores in the Detroit area and Chicago area.

10.     Nasah is an active domestic profit corporation under Michigan law. Nasah's registered office address is in Detroit, Michigan.

11.     Mars is an active domestic profit corporation under Michigan law. Mars's registered office address is in Hamtramck, Michigan.

12.     Mahad is an active domestic profit corporation under Michigan law. Mahad's registered office address is in Detroit, Michigan.

13.      Millinium is an active domestic business corporation under Illinois law, with its primary franchise location at 7226 W. Roosevelt Road, in Forest Park, Illinois.

14.     In 2001, Ahmed became a franchisee of Liberty Tax Service. He incorporated Nasah and began operating his first Liberty Tax Service franchise location.

15.     Ahmed has no education or training in federal income taxation, and does not consider himself to be knowledgeable about federal tax law.

16.     Between 2001 and 2013, Ahmed opened and operated a total of 12 Liberty Tax Service franchise stores through the entities discussed in paragraph 9 at the following addresses:

   a.   19134 Van Dyke Avenue, Detroit, Michigan, 48234 ("Van Dyke store");

   b.   7221 E. 7 Mile Road, Detroit, Michigan, 48234 ("7 Mile Road store");

   c.   14384 Gratiot Avenue, Detroit, Michigan, 48205 ("14384 Gratiot store");

   d.   10382 Gratiot Avenue, Detroit, Michigan, 48213 ("10382 Gratiot store");

   e.   10034 Joseph Campau Avenue, Hamtramck, Michigan, 48212 ("Jos. Campau store");

   f.   20725 Wyoming Street, Ferndale, Michigan, 48220 ("Wyoming Street store");

   g.   7231 E. 9 Mile Road, Warren, Michigan, 48091 ("9 Mile Road store");

   h.   9 S. Cicero Avenue, Chicago, Illinois, 60644 ("Cicero store");

   i.   3938 W. Madison Street, Chicago, Illinois, 60644 ("Madison store");

   j.   5948 W. Roosevelt Road, Chicago, Illinois, 60644 ("5948 Roosevelt store");

   k.   6638 W. Roosevelt Road, Oak Park, Illinois, 60304 ("6638 Roosevelt store"); and

   l.   7226 W. Roosevelt Road, Forest Park, Illinois, 60130 ("7226 Roosevelt store").

17.     During tax filing season, which is roughly January to April each year, Ahmed employs an average of 5 to 6 tax-return preparers in each store. Each store also has at least one store manager to supervise the tax preparers. The store managers also sometimes prepare returns. The store managers report directly to Ahmed.

18.     From 2010 until 2013, defendants' Liberty Tax Service franchise stores prepared 17,759 federal income tax returns. Ahmed's tax preparers make an hourly wage, and also receive

a bonus based on factors such as the number of returns they prepare during the tax season, and whether they receive complaints from customers.

19.     During the 2013 filing season, Ahmed hired store managers for his stores, marketed his stores' services, and lived in Michigan during tax filing season to personally manage the Michigan-based Liberty Tax Service stores.

20.     During the 2013 filing season, Ahmed visited his Chicago-area stores every 10 to 15 days.

**The Defendants' Fraudulent Tax Preparation Activities**

21.     Ahmed employs one or more persons to prepare tax returns for compensation, and he is therefore a tax return preparer as defined by 26 U.S.C. § 7701(a)(36).

22.     As detailed more fully below, since at least 2009, defendants' employees have intentionally understated customers' tax liabilities or intentionally input false information on tax returns to increase customers' claims for refundable credits.

23.     Defendants' employees prepared returns for customers that include, among other things, false or inflated Schedule C income and expenses, bogus dependents, false filing statuses, improper education credits, and false itemized deductions, all with the purpose of maximizing customer refunds and refundable credits.

24.     The IRS reviewed a random sample of tax returns prepared in 2013 for the 2012 tax year by defendants' Liberty Tax Service stores in Illinois and Michigan, and obtained interviews with more than 200 customers associated with these tax returns.

25.     Based on information volunteered by Liberty Tax Service customers during interviews, violations of the internal revenue laws were identified in nearly half of the randomly selected customers who had their tax returns prepared at defendants' Chicago-area stores and in

37 percent of the randomly selected customers who had their tax returns prepared at defendants' Detroit-area stores.

### Earned Income Credit Fraud

26.     Defendants' employees prepare tax returns that include fraudulent claims for the Earned Income Credit, often based on false or inflated Schedule C income and expenses, bogus dependents, and false filing statuses.

27.     The Earned Income Credit (EIC) is a refundable tax credit available to certain low-income working people. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability and have made no withholding payments. The amount of a taxpayer's EIC is based on multiple variables, including, among other things, the taxpayer's marital status, filing status (e.g., single, married filing separately, head of household), number of qualified dependents, and income caps. The requirements for claiming the EIC are set forth in 26 U.S.C. § 32 and the accompanying Treasury Regulations.

28.     The earned income requirement and maximum credit available each year varies. In 2012, the amount of EIC available for a single taxpayer with at least one qualified dependent increased as the taxpayer's income increased between $1 and $9,300. For a single taxpayer with two or three qualified dependents, the amount of EIC increased as the taxpayer's income increased between $1 and $13,050. For all taxpayers with qualified dependents, the EIC amount decreased as income increased beyond $17,100. Accordingly, the optimal amount of income needed to maximize the credit for the 2012 tax year was income between $9,300 and $17,100 for a single taxpayer with one dependent and income between $13,050 and $17,100 for a single taxpayer with two or more dependents.

29.     Because of the way the EIC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to decrease higher income to within the EIC range allows customers to claim a larger EIC.

30.     Because of the way EIC is calculated, taxpayers who claim one or more dependents can claim a larger EIC.

Violation of IRS Due Diligence Requirements

31.     Because of the potential for abuse in claiming the EIC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EIC for their customers. *See* 26 C.F.R. § 1.6695-2 (2011). Due diligence requirements mandate that a tax return preparer "must not know, or have reason to know, that any information used by the tax return preparer in determining the taxpayer's eligibility for, or the amount of, the EIC is incorrect." *Id.*

32.     These due diligence requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EIC. The tax return preparer "may not ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." *See* 26 C.F.R. § 1.6695-2 (2011). Tax return preparers must document their compliance with these requirements and keep that documentation for three years. *Id.*

33.     To document compliance with the due diligence requirements, tax return preparers must complete the "Paid Preparer's Earned Income Credit Checklist" (IRS Form 8867) and, when a tax return is electronically filed, must electronically file the completed Form 8867.

Tax return preparers must also complete an Earned Income Credit Worksheet or otherwise record the method and information the preparer used to compute a taxpayer's EIC.

34. Ahmed's employees acting at his direction and under his control routinely fail to comply with these due diligence requirements and, instead, take affirmative steps to falsify their compliance with due diligence requirements.

35. Section 6695 of the Internal Revenue Code imposes a penalty on tax return preparers who fail to comply with due diligence requirements.

36. During the years that defendants have operated the Liberty Tax Service stores discussed in paragraph 16, defendants' employees repeatedly failed to comply with due diligence requirements, and the IRS has assessed tens of thousands of dollars in EIC due diligence penalties against tax-return preparers employed by defendants.

37. In 2010, a number of Ahmed's employees were interviewed as part of the IRS's EIC due diligence visits to defendants' stores. When IRS employees visited defendants' stores to conduct due diligence reviews, they explained the requirements of due diligence and highlighted examples where due diligence requirements were not met. Ahmed was present when the IRS interviewed at least three of his return preparers in Detroit-area stores during 2010.

38. In 2010, a tax return preparer was assessed a $100 penalty for each failure to comply with due diligence requirements. In 2010, the IRS assessed defendants' preparers with $32,000 in due diligence penalties.

39. In 2011, the IRS assessed a preparer employed by defendants with $8,000 in due diligence penalties.

40.     For returns required to be filed after December 31, 2011, the due diligence penalty increased to $500 for each failure to comply with due diligence requirements. In 2013, the IRS assessed a preparer employed by defendants with $40,000 in due diligence penalties.

41.     As of May 2013, Ahmed had not terminated any tax-return preparer due to the preparer's failure to adhere to due diligence requirements or for engaging in fraudulent activities.

### Ahmed's Employees Have Continued Violating Due Diligence Requirements

42.     EIC due diligence problems persist at defendants' tax preparation stores as recently as 2014.

43.     In 2014, a preparer employed by defendants was assessed with $25,000 in EIC due diligence penalties for tax year 2013 returns.

44.     Even though the IRS has conducted EIC due diligence visits at defendants' franchise stores since at least 2009, Ahmed's franchises still fail to comply with EIC due diligence requirements.

45.     The IRS has consistently conducted compliance reviews of defendants' stores for the last five years. The IRS has identified the same EIC due diligence violations in defendants' stores each year, and it notes that defendants' due diligence practices have not improved.


### Defendants' Customer Files Contain Incomplete or Fabricated Information for Due Diligence Compliance

46.     Defendants' employees prepare tax returns using tax-preparation software provided by Liberty Tax Service.

47.     Typically, when customers of Ahmed's tax-preparation stores arrive, they are asked to complete a client data sheet before a tax preparer begins preparing the customer's return. The client data sheets are pre-printed with spaces to provide information about a

- 10 -

customer's contact information, marital status, and dependents, and include places where a customer can check or circle pre-printed words to provide information about his or her income and deductions.

48.     After defendants' employees complete a customer's return, they often ask customers to sign a Return Information Verification form, which states that the customer has verified that the information on the customer's return is correct.

49.     When defendants' employees prepare a return for a customer who is claiming Schedule C business income, defendants' employees often ask those customers to sign a form entitled "Compliance Letter of Engagement." The second page of this form includes an "Input Sheet for Self-Employed Tax Filers Using Schedule C." The Input Sheet has spaces for a taxpayer's name and for information about the taxpayer's Schedule C business type, gross business income, business expenses, and net income. The Input Sheet portion of the form states that the taxpayer provided his or her full business income and expenses to the preparer, and that the taxpayer further "understand[s] that the tax preparer[']s job is to **_only_** input the figures" provided on the form and to "insert the numbers into the [S]chedule C then print out my tax return." In instances where a Schedule C is filed with a return claiming an EIC, the Input Sheet purports to waive the preparer's due diligence requirements. The language supposedly avoids the legal requirement that preparers make "reasonable inquiries" to ensure customers are entitled to claim EICs.

50.     When defendants' employees prepare a return for a customer who is claiming a dependent that is not a child of the customer, defendants' employees often ask those customers to sign a form entitled, "Questionnaire for Niece/Nephew, Grandchild, or Brother/Sister Dependents."

51.     Defendants' employees place these forms—and other Liberty Tax Service forms—in customers' files at defendants' tax preparation stores.

52.     The Return Information Verification forms, Compliance Engagement Forms, Questionnaire forms for non-typical dependents, and other forms give the illusion– should the IRS conduct an investigation to determine whether the "due diligence" requirements are being followed – that defendants' employees are questioning customers, conducting required due diligence, and documenting customers' eligibility for the EIC.

53.     But defendants' employees often do not explain these forms to the customers. Worse, defendants' preparers write in information on the forms themselves, write in false information or information inconsistent with what the customer told them, or add information onto the forms after a customer has signed them or after a customer's return has been filed.

54.     At least ten customers said they were given a stack of papers and told by the preparer to sign "here, here, and here," without any explanation about the papers they were signing or the information on the papers.

55.     L.L. had her return prepared at Ahmed's 9 Mile Road store. When L.L.'s return was completed, the tax preparer told L.L. where to sign without explaining any of the forms she was signing. When L.L. later reviewed the forms included in her Liberty customer file during a voluntary interview with the IRS, she said that the numbers on the Input Sheet for Self-Employed Tax Filers were entered by the preparer and falsely stated that she had Schedule C business expenses, when she had none. L.L. also said that at least two of the signatures on the forms were forged.

56.     J.J. signed a stack of forms after his return was prepared at Ahmed's 7 Mile Road store. J.J. did not review the forms that he was signing at the time the return was prepared

because the preparer only showed him the bottom portion of the pages, where the signature line is located. When J.J. later reviewed the forms in his customer file, he saw that the preparer wrote in false responses to the Input Sheet for Self-Employed Tax Filers. The preparer wrote that J.J. owned and operated a Schedule C business as a barber, and fabricated amounts of business income and expenses, though J.J. did not work as a barber and did not tell the preparer that he did. The preparer also falsely wrote that J.J. has a logbook and records to verify his income in response to due diligence questions documented in J.J.'s customer file.

57.     Customer Q.G. signed an Input Sheet for Self Employed Tax Filers form after her 2012 return was prepared at Ahmed's Cicero store. The Input Sheet in Q.G.'s customer file includes gross income and expense amounts. Q.G. remembers that the spaces on this form were blank when she signed it after her return was prepared. Q.G. said the written-in numbers included on her Input Sheet are fabricated because she did not own or operate a Schedule C business as a "beautician," and did not tell the preparer she did.

58.     M.G. also had her 2012 return prepared at the Cicero store. She said the preparer falsely placed income and expense amounts on her return and in her customer file, despite that she and the preparer did not talk about M.G.'s self-employment income or any self-employment expenses. Although the preparer filled out responses to EIC due diligence questions in M.G.'s file, M.G. said the first time she heard any of the EIC questions the preparer purportedly asked is when the IRS agent read the questions to her during her interview.

59.     C.D. also signed a blank Input Sheet for Self-Employed Tax Filers form when her return was prepared at Ahmed's 10382 Gratiot store. When C.D. later saw the completed sheet during her interview with the IRS, C.D. said she did not write in the numbers that appear on the

sheet and did not provide those numbers to the preparer, who falsely overstated C.D.'s Schedule C income by more than $12,000.

60.     Customer R.S.'s 2012 return was prepared at the 7226 Roosevelt store February 21, 2013. Approximately one or two months after R.S.'s return was prepared, someone from 7226 Roosevelt called R.S. and asked her to return to the store to sign the Compliance Letter of Engagement and Input Sheet for Self-Employed Tax Filers form. R.S. later signed the form, and the office backdated it to the date on which R.S.'s return was filed.

61.     Y.V.'s 2012 return was prepared at 7226 Roosevelt Road in Chicago. The return preparer fabricated a "COSMO" business on Y.V.'s return, despite that Y.V. owned no business in 2012 and earned no business income. In June of 2013, shortly before she was interviewed by the IRS, someone from Liberty Tax Service called Y.V. and asked her to return to the store to sign additional paperwork. Y.V. later signed the papers presented to her by the store employee, but then read the papers more closely and saw that they mentioned business expenses. Y.V. asked the employee to give the form back to her, but the employee refused to give it back to her or to give her a copy of the form.

Fabricated or Inflated Schedule C Business Income and Expenses

62.     Not only do defendants' employees fail to adhere to the due diligence requirements, but their employees actively and affirmatively falsify information and/or intentionally record information on federal income tax returns that they know or reasonably should know is false in order to maximize the EIC for the customers of defendants' Liberty Tax Service stores.

63.     To bring a customer's reported earned income within EIC eligibility ranges, and depending on a customer's actual income, defendants' employees inflate or fabricate Schedule C

income to falsely increase reported earned income, or to claim bogus Schedule C deductions to falsely decrease reported earned income.

64.     T.B.'s 2012 return was prepared at the 10382 Gratiot store. T.B. earned only unemployment compensation during 2012. She was not self-employed, and did not tell her return preparer that she was. T.B.'s return preparer did not ask T.B. if she earned any other income in 2012, but nevertheless falsely reported that T.B. earned $10,625 as a "home health provider" during the year. The fabricated Schedule C income resulted in T.B. receiving a $2,899 EIC for 2012. T.B. was not provided with a copy of her 2012 tax return by Liberty Tax Service.

65.     J.J. did not tell his preparer at Ahmed's 7 Mile Road store that J.J. worked as a barber during 2012, and the preparer did not ask him any questions about being a barber. Still, the preparer falsely included a Schedule C to J.J.'s 2012 tax return, and fabricated the amounts of income and expenses reported on the Schedule C, including that J.J. earned $10,302 as a "barber." This fabricated business income increased J.J.'s 2012 income to $11,241, and resulted in him receiving an EIC of $3,169. The preparer also fabricated answers to EIC due diligence questions in J.J.'s file, falsely stating that J.J. said he had records and a log-book to reconstruct his income.

66.     J.H.'s 2012 return was prepared at Ahmed's 10382 Gratiot store. J.H. told her preparer that she sometimes made money during 2012 by styling hair for her friends and family members. J.H. did not discuss with her preparer how much money she made, and did not tell the preparer that she earned $8,354 in net profit styling hair in 2012. J.H. earned closer to $3,500 or less styling hair. The false Schedule C income increased J.H.'s taxable income to $10,788, and resulted in J.H. receiving a $3,169 EIC. In response to EIC due diligence questions submitted to the IRS on a Paid Preparer's Earned Income Credit Checklist (IRS Form 8867), the preparer

- 15 -

checked a box indicating that she confirmed the existence of J.H.'s Schedule C business and verified Schedule C income and expenses through records of gross receipts provided by the taxpayer. J.H. did not provide any records of business receipts or expenses to the preparer. J.H. was not provided with a copy of her return by her tax return preparer. J.H. was originally told that she would be charged $449 to have her tax return prepared. When she returned to pick up her refund check from Ahmed's Liberty Tax Service store, a Liberty employee told her she owed an additional $300. J.H. cashed her check and paid Liberty the extra $300.

67.     B.A.'s 2012 return was prepared at Ahmed's Van Dyke store. B.A. babysat her sister's children during 2012 for $50 a week, and she incurred no related expenses. B.A. told the preparer she made money babysitting, but did not tell the preparer how much. B.A. does not know how the preparer determined the business income and expenses numbers reported on B.A.'s return, which falsely reported $13,200 in gross receipts and $3,190 in expenses. B.A's Schedule C income was the only income reported on her 2012 tax return, and it enabled her to incorrectly receive a $3,169 EIC.

68.     Taxpayer S.O. had her 2012 return prepared by a manager at Ahmed's 7226 Roosevelt store. S.O. told the manager that she bought some cars during the year and asked if she could deduct any of her car-purchase expenses on her return. Instead of telling her no, the manager told S.O. that she "could find a place" for the expenses on S.O.'s return. The manager fabricated a Schedule C "driving" business, and reported $3,885 in car and truck business expenses, and no Schedule C income. S.O. did not own or operate a driving business—or any business—in 2012, did not tell the manager that she did, and  provided no documents to the manager suggesting that she had a driving business. The fabricated Schedule C business loss

reduced S.O.'s taxable income from $21,662 to $17,777 and thereby allowed her to receive an EIC of $5,092.

69.     Taxpayer E.R. had her 2012 return prepared at Ahmed's 5948 Roosevelt store by a store manager. E.R. told the manager that E.R. was unable to read or write. The manager told E.R. she would explain everything on the return. E.R. told the manager that she earned approximately $350 of self-employment income each week by babysitting, but incurred $800 in monthly business expenses paying for groceries for the children she babysits. E.R. brought receipts for her babysitting-related grocery expenses to Liberty Tax Service, but the manager told E.R. she did not need to see them. E.R. also told the manager she spent approximately $800 monthly on babysitting-related expenses, but the manager reported on E.R.'s Schedule C that she earned $13,042 in net business income after subtracting only $860 in expenses for the *year*. The increased income reported by the preparer falsely increased E.R.'s EIC by more than $1,500.

70.     L.G. had her 2012 return prepared at Ahmed's Liberty Tax Service location at 3938 W. Madison Street. L.G. earned Schedule C income during 2012 by working from her home styling hair. L.G. made approximately $3,600 for the whole year, and spent about $2,400 on business-related expenses. But the preparer reported that L.G.'s net income from her hairstyling business was $14,185, causing her to receive an EIC of $5,236. When the preparer finished preparing L.G.'s return, he gave L.G. a number of papers with Xs on them and told L.G. to sign by the Xs. The preparer did not explain these forms, and L.G. did not review these forms because she relied on the preparer to correctly prepare her return. L.G. was not aware of the numbers entered on a Liberty Tax Net Profit from Business Worksheet in her file, and she did not write in the numbers on that form. L.G. was given a copy of her return, but the copy provided did not include the Schedule C that was filed with the IRS on L.G.'s behalf.

71.     In 2012, taxpayer R.T. earned wage income reported on a Form W2. R.T.'s tax preparer, who worked at Ahmed's Madison store, asked R.T. if she had any other income, and R.T. said she also styled children's hair for money. The preparer did not ask how much R.T. earned in 2012 and did not ask income-estimation questions such as how much R.T. charged, for how many children she styled hair, or how much money she made. Instead, the preparer falsely inflated R.T.'s Schedule C income, reporting that she earned $7,540 in net business income, when R.T. estimated her income was much lower. The inclusion of the Schedule C income on R.T.'s return caused her to receive an EIC of $3,169.  R.T.'s preparer also did not ask R.T. if she incurred business expenses, and fabricated $1,250 in supply costs. R.T. did not write the numbers that are present on a sheet in her customer file purportedly summarizing her gross income. R.T. also denied she provided the answers the preparer wrote in response to EIC due diligence questions included in R.T.'s customer file. When the IRS told R.T. that the preparer wrote that R.T. had a log book to show her business income and expenses, R.T. asked, "what is that?" The preparer falsely stated on the Form 8867 filed with the IRS that the preparer relied upon records of expenses provided by R.T. in completing R.T.'s Schedule C.

72.     In contrast, G.S.'s 2012 return improperly omitted her Schedule C income, which maximized her EIC. G.S.'s return was prepared at Ahmed's 7226 Roosevelt Road store. G.S. earned approximately $17,369 in wage income during 2012. G.S. told her preparer that she also earned between $2,500 and $3,000 in 2012 as a self-employed house cleaner. Incredibly, the preparer told G.S. that it was better not to include this income on her return, and did not include it, thus increasing her EIC to $5,176 by keeping her reported income closer to the optimal EIC range.

73.     Similarly, K.W. had his 2012 return prepared at Ahmed's 9 Mile Road store. K.W. earned $15,270 in wage income in 2012, and also earned approximately $5,000 doing self-employed landscaping work. K.W. told the preparer about his additional landscaping income, and she told him not to worry about claiming it because he had W2 income and that was enough. The omission of K.W.'s landscaping income improperly reduced his taxable income and allowed him to receive an inflated EIC of $5,236.

False Dependents

74.     Defendants' employees prepare tax returns that claim improper or inflated EICs, child tax credits, and dependent exemptions by reporting false dependents for their customers.

75.     Among the qualifications for dependent-child status, a person must reside with the taxpayer for more than half the year and must be under the age of 19, or be under the age of 24 and a full-time student, or qualify as totally and permanently disabled. Among the qualifications for claiming a dependent relative in 2012, the dependent-relative must have had gross income of less than $3,800 for the year and the taxpayer claiming them must have provided more than half of the dependent-relative's support.

76.     J.M.'s 2012 return was prepared at Ahmed's 6338 Roosevelt store by one of Ahmed's store managers. A friend of J.M.'s was a child care provider during 2012, and she gave J.M. the names and social security numbers of two children who attended her day care. The friend told J.M. to go to Liberty Tax Service and ask for the store manager by name, then provide the information for the two children, and the manager would get J.M. a large refund in exchange for the manager keeping half of the refund. J.M. met with the manager and told her that she was single and the children were not hers. The manager told J.M. to claim the children as dependents regardless because J.M. would get a larger refund, and could also file as head of

household because J.M. was single. J.M. received a refund of $5,012. The manager charged J.M. $500 to prepare her return. When J.M.'s refund check came, she kept $2,000 and the manager kept the rest. The manager concealed that she prepared this return by filing it under the name of a different employee working in the same office.

77.     A preparer at Ahmed's Van Dyke store prepared M.C.'s 2012 federal income tax return. The preparer suggest that M.C. include two dependents on her return who are not related to M.C. The preparer told M.C. that the preparer knew the children's parents and could provide their social security numbers for M.C. and copies of the children's social security cards for M.C.'s customer file. The preparer reported both children on M.C.'s 2012 return knowing that they were not M.C.'s dependents, causing her to receive an EIC of $5,236.

78.     C.Y.'s 2012 return was prepared at Ahmed's 14384 Gratiot store.  C.Y.'s brother and sister are claimed as dependents on his tax return. The return preparer wrote on the Form 8867 filed with the IRS that both dependents were disabled and that the preparer relied upon a doctor's statement to show C.Y.'s dependents were disabled. Neither of C.Y.'s siblings is disabled, and he did not tell the preparer that they are. Claiming two dependents increased C.Y.'s exemptions and lead to him receiving an improper refund of $2,055.

**False Filing Statuses**

79.     Defendants' employees prepare tax returns that improperly claim inflated standard deductions by falsely reporting that their customers have "head of household" filing status.

80.     To qualify for "head of household" filing status, among other things, a taxpayer generally must be unmarried or live separately from his or her spouse for the last six months of the tax year, must pay more than half of the cost of keeping up a home for the tax year, and must

have a qualified dependent. Defendants' employees file returns using "head of household" status for taxpayers they know are not entitled to claim such status.

81.     Customer files maintained by defendants' Liberty Tax Service stores, and reviewed by the IRS for tax year 2012, include a form entitled "Filing Status Flow Chart," which was signed by customers of defendants' tax return preparation stores. Most of the forms, although signed, do not indicate the filing status selected by the taxpayer or reported on the taxpayer's return.

82.     C.M.'s 2012 return was prepared at Ahmed's Cicero store. C.M. told the tax preparer that she was single, that she and her children lived with C.M.'s mother during 2012, and that her mother paid all the bills and utilities associated with the residence. The preparer filed C.M.'s return with head of household status even though she did not qualify to claim this status and the associated larger deduction.

83.     B.B. had his 2012 return prepared at Ahmed's 9 Mile Road store. B.B. told the preparer that he lived with his father all year and that his father paid for more than 50 percent of household living expenses, and B.B. only paid a bill or two. The preparer improperly filed B.B.'s return using head of household status.

**Bogus Education Credits**

84.     Another common practice at Ahmed's Liberty Tax Service stores involves fabricating education expenses and falsely claiming refundable education credits, including the American Opportunity Tax Credit, on customers' federal income tax returns. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability.

85.     Defendants' employees falsely claim education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, or falsely inflate the education expenses of customers who did attend college, in order to fraudulently reduce their customers' taxable income or generate a larger bogus refund.

86.     For example, D.J. did not attend college in 2012, did not tell his tax-return preparer that he did, and provided no documents suggesting he incurred educational expenses in 2012. Despite this, the preparer at Ahmed's 7226 Roosevelt Road store, who was also a store manager, reported on D.J.'s federal income tax return that he spent $4,000 on qualified education expenses during 2012. D.J. received an education credit to which he was not entitled.

87.     L.M. earned no income in 2012 and was not required to file a federal income tax return. She had a federal tax return completed at Ahmed's 7 Mile Road store to aid her claim for Supplemental Security Income. L.M.'s tax return preparer falsely reported on L.M's federal return that she incurred $3,238 in qualified education expenses during 2012. L.M. did not attend college during 2012 and has never attended college. Because of the false education expenses claimed on L.M.'s return, she received a $924 federal income tax refund arising solely from an improper refundable American Opportunity credit of $924.

88.     J.L. had his 2012 tax return prepared at Ahmed's 7226 Roosevelt Road store by a store manager. J.L. told the manager that he took one class at Malcom X Community College during 2012. The manager did not ask J.L. how much he spent on the class, or if he had any other educational expenses. J. L. spent $80 to attend the class, but the manager reported on J.L.'s tax return that he had $4,000 in qualified education expenses at a different school. J.L. was surprised to learn that the manager grossly inflated his education expenses and reported that he attended a

school he had never heard of. J.L. received a $1,000 American opportunity credit based on the false education credits reported on his return.

89.     T.P.'s 2012 tax return was prepared at Ahmed's 7 Mile Road store. T.P. earned $36,124 in wage income during 2012 and filed her return using head of household status with one dependent. When T.P.'s return was finished, the preparer told T.P. that her refund was too low. The preparer removed a document from another customer's file and told T.P. that if T.P. claimed that person's education-related expenses on T.P.'s 2012 return, T.P.'s refund would dramatically increase. T.P. told the preparer she did not want to get in trouble, but agreed to include the education-expense information on her return. The preparer reported that T.P. attended Oakland Community College—a school T.P. has never heard of—and that T.P. incurred $3,015 in qualified educational expenses for 2012. T.P.'s refund was increased by a $902 refundable American Opportunity credit.

### Other False and Fraudulent Tax Returns

90.     When customer P.K. had her 2012 return prepared at the 10382 Gratiot store, she told her preparer that she sometimes styled eyelashes for friends and family during the year. She did not tell the preparer that she was a hairstylist, and provided no amounts of income or expenses for a hair-styling business (or eyelash-styling business). P.K.'s preparer falsely reported that she earned $550 in gross income as a hair stylist, but incurred $5,999 in business expenses. This false information generated a net business loss that reduced P.K.'s taxable income and caused her to receive a refund of $4,405. P.K. did not receive a copy from Liberty Tax Service of her return when it was filed.

91.     Married couple W.S. and C.S. had their 2012 joint return prepared at Ahmed's 7 Mile Road store. The preparer improperly inflated the couple's Schedule A deductions. C.S. and

W.S. estimate they spent $1,800 on medical expenses during 2012, but the preparer reported on the taxpayers' Schedule A that they incurred $7,000 in medical and dental expenses. The taxpayers provided their medical bills to the preparer, and gave no information to suggest they incurred $7,000 in medical expenses. The taxpayers also provided the preparer with a Form 1099 reporting social security income they earned in 2012, but the preparer did not include this income on the taxpayer's return.

92.     D.H. had his 2012 return prepared at Ahmed's 7226 Roosevelt store. D.H. worked for the post office in 2012 and told his preparer he paid $30 per week to clean his uniform. D.H. provided no other business-expense information and did not tell his preparer he incurred expenses searching for a job or paying for a work-related cell phone. D.H.'s preparer included $9,158 in unreimbursed employee business expenses on Schedule A to D.H.'s return. These expenses purportedly included cell phone and job-search expenses. Even though costs of commuting are not deductible expenses, the preparer also asked D.H. how long his commute to work is, and then used the mileage D.H. provided to falsely create a "job travel" expense. The tax preparer also falsely reported education expenses on D.H.'s return. These fraudulent adjustments resulted in a $4,225 understatement of the amount of tax D.H. owed for 2012. Liberty Tax Service did not provide D.H. with a copy of his return.

93.     When A.T. had his 2012 return prepared at Ahmed's 7226 Roosevelt store, the preparer, who is also a store manager, asked A.T. how many miles he drove to and from work. A.T. told the manager his commute was 36-miles long. The manager falsely reported on a Schedule A filed with A.T.'s tax return that A.T. incurred $27,750 in unreimbursed employee business expenses by driving 50,000 miles on *business* travel. A.T. also told the manager that he donates approximately $25 to $35 each week to his church. Thus, at most, A.T.'s gifts to charity

totaled $1,820 for the year. But the manager reported A.T. gave $2,514 to charity in 2012. The manager's fabrication and manipulation of A.T.'s itemized deductions caused him to deduct over 60% of A.T.'s adjusted taxable income, which caused A.T. to improperly receive a $6,041 refund.

94.     T.B. did not have false information included on his 2012 federal tax return, but only because he vigilantly checked the information reported by his tax return preparer and declined to participate in fraud. While his 2012 return was being prepared at Ahmed's 7226 Roosevelt store, the preparer (a store manager) reported on his return that T.B. was a full-time student. When T.B. told the manager he was not a student, she told him it was okay to claim that he was because he would receive a large refund if he did. T.B. declined. The manager also told T.B. that T.B. could claim one of the preparer's children as a dependent if he wanted to. T.B. again declined.

### Defendants Prepared Improper and False Tax Returns, and their False Tax Preparation is Ongoing.

95.     The preparation of improper tax returns at defendants' Liberty Tax Service stores spans at least four years and occurs in defendants' Michigan and Illinois stores.

96.     The IRS has made adjustments to hundreds of tax returns filed by defendants' franchise stores in Michigan and Illinois for the 2010, 2011, 2012, and 2013 tax years (prepared from 2011-2014). The audit adjustments have led to tax deficiencies owed to the United States for all four years, as set forth below.

| Tax Year | Total Tax Deficiency | |
| --- | --- | --- |
| | Returns filed by Defendants' Michigan Stores | Returns filed by Defendants' Illinois Stores |
| 2010 | $836,962.00 | $211,251.00 |
| 2011 | $564,282.00 | $158,985.00 |
| 2012 | $728,466.60 | $160,565.00 |
| 2013 | $170,870.00 | $26,567.00 |
| **Total** | **$2,300,580.60** | **$557,368.00** |

97.     Defendants' misconduct is ongoing. As set forth in the above table, tax returns filed in defendants' stores during 2014 (for the 2013 tax year) have led to a current total deficiency in Michigan and Illinois stores of $197,437.00.

98.     Defendants' stores were active during the 2015 filing season. As of April 9, 2015, the Detroit-area stores had filed 2,402 federal tax returns during 2015 and the Chicago-area stores had filed 255 federal tax returns. 99% of the returns electronically filed by defendants' Chicago-area stores and 87% of the returns electronically filed by defendants' Detroit-area stores claimed a federal tax refund, as of April 9, 2015. Additionally, 72% of returns electronically filed by defendants' Chicago-area stores and 62% of returns electronically filed by Detroit-area stores have claimed the EIC, as of April 9, 2015.

**Violations of the IRS's Electronic Filing Requirements**

99.     Defendants' franchise stores electronically file approximately 90% of the federal tax returns they prepare with the IRS.

100.     If a tax return preparation business files more than 11 federal income tax returns each year, the business is required to register as an electronic filer with the Internal Revenue

Service, and to file all returns using an Electronic Filing Identification Number (EFIN). To have an EFIN assigned, a business must submit an e-file application, meet eligibility criteria, and pass a suitability check.

101.    An EFIN is a unique number that clearly identifies the authorized IRS e-filer and the location where the return was prepared. The issuance and use of EFINs allows the IRS to control who provides e-filing services to the public and further allows the IRS to monitor—and hold accountable—preparers who electronically file tax returns.

102.    In 2001, Ahmed applied for an EFIN on behalf of Nasah and Nasah's Liberty Tax Service stores. Ahmed was listed as Nasah's primary contact, principal, and responsible official.

103.    Until 2010, all EFINs used by defendants' franchise stores belonged to Ahmed individually.

104.    In 2009, the IRS suspended Nasah's EFIN, and Ahmed's other EFINs for two years due to defendants' failure to pay penalties assessed against Nasah. Ahmed appealed this suspension, and it was upheld by the IRS Office of Appeals.

105.    From 2010 until 2011, Ahmed improperly circumvented the IRS's suspension of his EFIN by using EFINs assigned to other people and entities. Ahmed's actions interfered with the IRS's ability to monitor IRS e-filers and enforce electronic filing requirements.

106.    In 2013, Ahmed again obtained EFINs registered in his name.

107.    During the 2013 filing season, Mahad operated one of Ahmed's Liberty Tax Service stores and Mars operated two stores. IRS records reveal that no returns were prepared in 2013 under either Mahad's or Mars's Electronic Identification Number (EIN).  Returns prepared at stores operated by Mahad and Mars were improperly filed with the IRS using Nasah's EFIN.

The improper filing information included on returns filed by Mahad and Mars interfered with the IRS's ability to monitor IRS e-filers and enforce electronic filing requirements.

108.     In 2011, the IRS visited one of Ahmed's Chicago stores to conduct an Electronic Return Originator (ERO) Compliance visit. This visit examined Ahmed's compliance with the IRS's electronic filing requirements.

109.     The IRS discovered a number of problems at Ahmed's stores. Notably, Ahmed did not inform the IRS that people other than him were involved in the day-to-day management of his stores and were responsible for managing the store's e-file system.

110.     The IRS also discovered that Ahmed had not accurately disclosed the company name for the store affiliated with his e-file application. The store under review was owned by Millinium, but the IRS e-file application stated that it belonged to Mars.

111.     Ahmed's failure to disclose to the IRS the correct name of the entity that owned his tax preparation location, and the store managers responsible for electronically transmitting returns to the IRS, thwarts the IRS's efforts to ensure compliance with the IRS e-file system and regulations that bind federal income tax preparers.

112.     In February 2011, Ahmed was given a warning from the IRS for his failure to abide by the rules of the ERO system.

## Harm Caused by Ahmed and his Employees

113.     The preparation of fraudulent tax returns by defendants' employees has harmed the public and the United States Treasury. Defendants' practices harm the public by illegally causing their customers to incorrectly report their federal tax liabilities and underpay their taxes.

114.     Many of defendants' customers are unsophisticated taxpayers with very low incomes. Many receive public assistance. Some of these customers have no knowledge that the

defendants' employees prepare and file fraudulent tax returns on their behalf. For others, defendants' employees encourage customers to participate in the tax fraud by promising them thousands of dollars of illegal or illegally inflated refunds.

115.    Defendants' tax preparation stores keep a large portion of their customers' fraudulently obtained refunds as tax-preparation fees. Even when defendants' employees prepare non-fraudulent tax returns for customers, the employees charge those customers unconscionably high tax preparation fees.

116.    In the randomly sampled returns reviewed by the IRS for tax year 2012, defendants' Liberty Tax Service stores charged an average tax preparation fee ranging from $300 to $400. In many instances, tax preparers working at defendants' stores charged more than $650 to prepare a tax return. Because defendants' customers are often low-income taxpayers, defendants' unconscionably high fees frequently pose a significant financial hardship for defendants' customers because the fees charged constitute a significant portion of the customers' annual income.

117.    For example, B.B. was charged $682 to have her return prepared at defendants' Van Dyke store. B.B.'s return reported that she earned $10,268 in income during 2012, thus making the fee Liberty Tax Service charged her more than 6% of B.B.'s annual income. Until she was interviewed by the IRS, B.B. did not know her fee was that high. B.B.'s return preparer did not tell her what her fee would be, she only asked B.B. to approve her return by signing an electronic signature pad.

118.    Six customers of defendants' Michigan-based Liberty Tax Service stores paid $657 to have their 2012 federal income tax returns prepared. One of the customers, J.J., did not

know he paid $657, because the fee was taken out of his refund. Another customer, Q.K., was never shown how high the fee would be, though it equaled 4% of her 2012 income.

119.    A.O. submitted a complaint to the IRS after having her return prepared at Ahmed's 9 Mile Road store. A.O. agreed to pay $389 to have her return prepared, but the refund she received was less than she expected. When A.O. called the store, she was told that her preparer failed to adequately explain the fee to her, and she had actually been charged $721 through automatic deduction from her refund. The fee charged was 8.5% of A.O.'s 2012 income and 23% of her 2012 tax refund.

120.    Defendants' fraudulent practices likewise harm the United States Treasury in the form of lost tax revenue.

121.    Based on interviews of customers connected with the tax returns that were randomly sampled by the IRS, the IRS has calculated a massive tax-loss to the government for returns filed in 2013 for the 2012 tax year.

122.    In 2013, defendants' Detroit-area franchise stores prepared 2,838 returns. Based on analysis of information obtained from interviews of 123 taxpayers drawn from a statistically random sample of all taxpayers whose 2012 income tax returns were prepared by defendants' Detroit-area Liberty Tax Service stores, the total estimated harm to the government caused by defendants' misconduct in Detroit could be as much as $1 million for 2012 alone.

123.    In 2013, defendants' Chicago-area franchise stores prepared 485 returns. Based on analysis of information obtained from interviews of 112 taxpayers drawn from a statistically random sample of all taxpayers whose 2012 income tax returns were prepared by Defendants' Chicago-area Liberty Tax Service stores, the estimated harm to the government caused by

defendants' misconduct in Chicago could be as much as $500,000 for returns prepared in 2012 alone.

124.    Additionally, hundreds of tax returns prepared by defendants' Liberty Tax Service franchise stores have been examined and adjusted by the IRS, revealing large tax deficiencies for returns originating from defendants' tax-preparation stores.

125.    From 2010 until 2013, defendants' Liberty Tax Service franchise stores prepared 17,759 federal income tax returns. As of January 28, 2015, the IRS has adjusted hundreds of federal income tax returns prepared and filed by defendants' employees for the 2010 through 2013 tax years. These adjustments are set forth in paragraph 96. The adjustments have resulted in a total actual tax loss to the United States of **$2,857,948.60.**

126.    Defendants' misconduct further harms the United States and the public by requiring the IRS to devote scarce resources to detecting that misconduct and to assessing and collecting lost tax revenues from defendants' customers.

127.    Defendants' misconduct harms their employees by knowingly exposing them to possible civil and criminal liability.

128.    Finally, defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

129.    The harm to the government and the public will increase unless defendants are enjoined because—given the seriousness and pervasiveness of defendants' improper conduct— without an injunction, defendants are likely to continue enabling the preparation of false and fraudulent federal income tax returns. An injunction will serve the public interest because it will

put a stop to the defendants' conduct and to the harm that such conduct causes the United States and its citizens.

## COUNT I: INJUNCTION UNDER I.R.C. § 7407

130.    The United States incorporates by reference the allegations contained in paragraphs 1 through 129.

131.    Under I.R.C. § 7407, the United States may seek an injunction against any tax return preparer who has engaged in any "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws," or who has "engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title."

132.    If a return preparer's misconduct is continual or repeated and the court finds that a narrower injunction (e.g., prohibiting specific enumerated conduct) would not be sufficient to prevent the preparer's interference with the proper administration of federal tax laws, the court may enjoin the person from further acting as a return preparer.

133.    Defendants' employees have continually and repeatedly prepared and filed with the IRS false federal income tax returns on behalf of their customers. As a result, defendants' employees have continually and repeatedly engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws.

134.    Defendants' employees are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns that contained unreasonable positions and substantially understated the liability for tax on the return.

135.    Defendants' employees have continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6694 by preparing federal tax returns that understated their

customers' liabilities based on unrealistic, frivolous and reckless positions. Defendants' employees, through the actions described above, recklessly or intentionally disregard IRS rules or regulations.

136.    Defendants' employees have continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6695. The Treasury Regulations promulgated under § 6695(g) prohibit a return preparer from claiming the EIC without first conducting proper due diligence and documenting his or his compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2. Defendants' employees do not comply with these due diligence requirements by ignoring, disregarding, or failing to adequately verify information provided by customers.

137.    Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Ahmed and employees of defendants' tax preparation stores will be free to prepare or assist in preparing more false federal income tax returns and engage in other misconduct as described in this complaint.

138.    Ahmed should be permanently enjoined under I.R.C. § 7407 from acting as a federal tax return preparer because a more limited injunction would be insufficient to stop him from interfering with the proper administration of the tax laws.

## COUNT II: INJUNCTION UNDER I.R.C. § 7408

139.    The United States incorporates by reference the allegations contained in paragraphs 1 through 129.

140.    Under I.R.C. § 7408(c)(1), a district court may enjoin any person from, inter alia, engaging in conduct subject to penalty under I.R.C. § 6701 if injunctive relief is appropriate to prevent recurrence of that conduct.

141.    Section 6701 penalizes any person who aids or assists in, procures, or advises with respect to the preparation of any portion of a federal tax return, refund claim, or other document who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under I.R.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

142.    Ahmed's employees acting under his supervision caused the preparation of false and fictitious tax returns and other documents, including preparing, assisting, and/or advising with respect to the presentation and preparation of federal tax returns for customers that they knew would understate the customers' correct tax liabilities. Defendants' employees knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus income and bogus expense deductions. Defendants' employees procured and assisted the preparation of false and fraudulent tax returns by preparing and filing tax returns that they knew or should have known were false or fraudulent, and by encouraging the filing of tax returns they knew or should have known were false or fraudulent. As a result, Ahmed has engaged in conduct subject to penalty under I.R.C. § 6701.

143.    If the Court does not enjoin defendants, doing business as Liberty Tax Service, defendants are likely to continue engaging in conduct subject to penalty under I.R.C. § 6701. The preparation of returns claiming improper expenses and deductions is widespread throughout defendants' stores, over many customers and tax years. Injunctive relief is therefore appropriate under I.R.C. § 7408.

## COUNT III: INJUNCTION UNDER I.R.C. § 7402(a)

144.    The United States incorporates by reference the allegations contained in paragraphs 1 through 129.

145.    Under I.R.C. § 7402(a), a court may issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

146.    Defendants' employees have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, including intentionally understating customers' tax liabilities and filing false federal tax returns on behalf of customers.

147.    Unless enjoined, defendants are likely to continue engaging in improper conduct, including filing false and fictitious returns on behalf of taxpayers. If not enjoined from engaging in fraudulent-filing conduct, defendants and defendants' employees will inflict irreparable injury upon the United States because the government will wrongfully provide federal income tax refunds to individuals not entitled to receive them or will collect less than the correct amount of tax from individuals who owe taxes to the United States.   Injunctive relief is therefore appropriate under I.R.C. § 7402(a).

### Relief Sought

WHEREFORE, the United States of America prays for the following relief:

A.    That the Court find that Ahmed and the entity defendants have continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694, 6695, and 6701, and that injunctive relief is appropriate under I.R.C. §§ 7402, 7407, and 7408 to bar Ahmed from acting as a tax return preparer;

B.      That the Court find that defendants have substantially interfered with the enforcement and administration of the internal revenue laws, and that injunctive relief against them is appropriate to prevent further misconduct pursuant to I.R.C. §§ 7402(a), 7407(b)(2), and 7408(b)(2);

C.      That the Court permanently enjoin defendants from acting as federal tax return preparers and from preparing or filing federal tax returns or forms for others, from representing others before the IRS, and from advising anyone concerning federal tax matters;

D.      That the Court permanently enjoin Ahmed and his representatives, agents, servants, employees, and anyone in active concert or participation with him, from directly or indirectly:

(1)      Preparing or filing, or assisting in, or directing the preparation or filing of any federal tax return or amended return or other related documents or forms for any other person or entity, other than Ahmed filing his own federal tax return;

(2)      Advising taxpayers to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the misuse of false IRS Forms 1040 or other IRS forms;

(3)      Engaging in conduct subject to penalty under I.R.C. §§ 6694 or 6701, including preparing and filing tax returns and other documents that understate the tax liabilities of others;

(4)      Engaging in any other conduct that is subject to penalty under the Internal Revenue Code or that interferes with the proper administration and enforcement of the internal revenue laws;

(5)     Owning, managing, controlling, working for, profiting from, or volunteering for a tax-return-preparation business;

(6)     Seeking permission or authorization (or helping or soliciting others to seek permission or authorization) to file tax returns with an IRS Preparer Tax Identification Number ("PTIN") and/or IRS Electronic Filing Identification Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns; and

(7)     Using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN(s) and EFIN(s).

E.     That this Court permanently enjoin Ahmed from filing, providing forms for, or otherwise aiding and abetting the filing of false IRS Forms 1040 or any other IRS forms for himself or others;

F.     That this Court order Ahmed to provide to the United States a list of all individuals and entities for whom Ahmed has provided tax preparation services since January 1, 2011;

G.     That this Court allow the government full post-judgment discovery to monitor defendants' compliance with the injunction; and

//

//

//

//

//

//

//

      H.      That this Court grant the United States such additional relief as the Court deems just and appropriate.

Dated: April 22, 2015

| | |
|---|---|
| LOCAL COUNSEL: | CAROLINE D. CIRAOLO<br>Acting Assistant Attorney General |
| BARBARA L. McQUADE<br>United States Attorney | */s/ Erin Lindgren*_____ |
| | ERIN LINDGREN |
| PETER A. CAPLAN | Trial Attorney, Tax Division |
| Assistant U.S. Attorney | U.S. Department of Justice |
| 211 W. Fort Street, Ste. 2001 | Minn. Bar No. 392617 |
| Detroit, MI 48226 | P.O. Box 7238 |
| (313) 226-9784 | Washington, D.C. 20044-0683 |
| P30643 | Facsimile: (202) 514-6770 |
| Email: peter.caplan@usdoj.gov | Telephone: (202) 353-0013 |
| | Erin.Lindgren@usdoj.gov |
| | GREGORY S. SEADOR |
| | Trial Attorney, Tax Division |
| | U.S. Department of Justice |
| | Gregory.S.Seador@usdoj.gov |
| | |
| | *Attorneys for the United States of America* |